UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at FRANKFORT


CIVIL ACTION 3:06-39


BELLSOUTH TELECOMMUNICATIONS, INC.,                           PLAINTIFF,


v.                          **OPINION AND ORDER**


JOHN FARRIS, *Secretary of the Finance*
*and Administration Cabinet,* et al.,                           DEFENDANTS.

**** **** **** ****

This matter is before the Court on the Defendants' Motion to Dismiss (Rec. No. 7) and the

Plaintiff's Motion for Preliminary Injunction or Summary Judgment (Rec. No. 8). For the following

reasons, the Court will DENY the Motion to Dismiss and will GRANT the Motion for Summary

Judgment in part and DENY it in part.

I.      **FACTS.**

A.      **KRS § 136.616(3) ("Section 3").**

With this action, the Plaintiff BellSouth Telecommunications, Inc. ("BellSouth") asks the

Court to enjoin enforcement of two Kentucky statutory provisions and to declare that the provisions

are void and unenforceable because they are preempted by federal law and violate the First

Amendment.

BellSouth is an incumbent local exchange carrier ("ILEC"). (Rec. No. 1, Complaint ¶ 9). It

provides local telephone service to end users. (Rec. No. 1, Complaint ¶ 9). Pursuant to the Federal

Communications Act, 47 U.S.C. § 151 *et seq.* (the "Communications Act"), ILECs like BellSouth

are also required to provide other telecommunications service providers access to its local network and plant facilities so the other providers can originate or terminate interstate and intrastate telephone calls. (Rec. No. 1, Complaint ¶¶ 9, 18).  BellSouth provides such access services to interexchange (long distance) carriers, wireless carriers, competing local telephone companies and other communications service providers.  (Rec. No. 1, Complaint ¶ 9).

KRS 136.616 provides, in relevant part, the following:

> (1)     A tax is hereby imposed on the gross revenues received by all providers.

> (2)     The tax rate shall be:. . . (b) One and three-tenths percent (1.3%) of the gross revenues received for the provision of communications services, as sourced under the provisions of KRS 139.105, billed on or after January 1, 2006.

> (3)     The provider shall not collect the tax directly from the purchaser or separately state the tax on the bill to the purchaser.

KRS §136.616.

BellSouth does not seek to enjoin, restrain or suspend the assessment, levy or collection of the 1.3% gross revenue tax ("GRT"). (Rec. No. 1, Complaint ¶ 5). BellSouth objects only to Section 3 of KRS §136.616 which prohibits it from collecting the newly imposed 1.3%  GRT directly from purchasers and from separately stating the tax on the bill to the purchasers. BellSouth also asks the Court to enjoin the penalty provision found at KRS §136.990(11) (the "Penalty Provision") which states that any provider who violates Section 3 is "subject to a penalty of twenty five dollars ($25) per purchaser offense, not to exceed ten thousand dollars ($10,000) per month."

BellSouth states that Section 3 conflicts with the exclusive authority of the FCC to determine the rates for the provision of interstate services. (Rec. No. 1, Complaint ¶ 6).  BellSouth also argues

that Section 3 violates the First Amendment. (Rec. No. 1, Complaint ¶ 7).

   **B.    Section 3's Alleged Impact on BellSouth.**

   BellSouth states that its customer bills contain its charges for communications services, including interstate access services and intrastate services.  (Rec. No. 1, Complaint ¶28).  Its bills also include a number of separate line-item charges covering the cost of certain taxes and fees imposed on it by state and local governments.  (Rec. No. 1, Complaint ¶ 28).

   BellSouth states that it has continuously paid the Kentucky GRT and has not passed on the GRT cost to its Kentucky customers via a separate line item.  (Rec. No. 1, Complaint ¶ 32). It states that, but for Section 3 and the Penalty Provision, however, it would pass on the Kentucky GRT to its Kentucky customers.

   BellSouth argues that Section 3 infringes upon its "federal right" to pass on the cost of the Kentucky GRT to its customers via a separate line item.  (Rec. No. 1, Complaint ¶ 34).  BellSouth also argues that, to the extent that the Kentucky GRT applies to gross revenues received by BellSouth from interstate access services, the FCC possesses the exclusive authority to determine the manner in which BellSouth may recover the cost of the tax.  (Rec. No. 1, Complaint ¶ 36).

   BellSouth also argues that, by depriving it of the right to use billing statements to communicate with its customers of both interstate and intrastate telecommunications services concerning the Kentucky GRT, Section 3 infringes upon BellSouth's rights under the First Amendment.  (Rec. No. 1, Complaint ¶ 37).  BellSouth argues that the line item would "inform the customers of the origin and amount of the Kentucky GRT charge."  (Rec. No. 1, Complaint ¶ 49).

## II.    DEFENDANTS' MOTION TO DISMISS (Rec. No. 7).

   On a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), "a complaint should not be

3

dismissed. . . unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Cruz v. Beto*, 405 U.S. 319, 322 (1972)(citation omitted). "[T]he factual allegations in the complaint must be regarded as true. The claim should not be dismissed unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Scheid v. Fanny Farms Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988) (quoting *Windsor v. The Tennessean*, 719 F.2d 155, 158 (6th Cir. 1983)).

The Defendants move to dismiss BellSouth's complaint on the grounds that the action is barred by the Tax Injunction Act ("TIA"), 28 U.S.C. § 1341. The TIA prohibits district courts from enjoining, suspending or restraining the "assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." 28 U.S.C. § 1341.

BellSouth argues that it does not seek to enjoin or restrain the assessment, levy or collection of the GRT. Instead, BellSouth states that it only objects to Section 3 which prohibits it from collecting the tax directly from the purchaser and separately stating the tax on the bill to the purchaser. Thus, BellSouth argues the TIA does not prohibit this action in federal court. In support of its argument, BellSouth cites *Hibbs v. Winn*, 542 U.S. 88 (2004). In that case, in determining the scope of the TIA, the Court noted that:

> the Senate Report commented that the Act had two closely related, state-revenue-protective objectives: (1) to eliminate disparities between taxpayers who could seek injunctive relief in federal court – usually out-of-state corporations asserting diversity jurisdiction – and taxpayers with recourse only to state courts, which generally required taxpayers to pay first and litigate later; and (2) to stop taxpayers, with the aid of a federal injunction, from withholding large sums, thereby disrupting state government finances.

*Id.* at 104.

The Court determined that, in enacting the TIA, "Congress trained its attention on taxpayers who sought to avoid paying their tax bill by pursuing a challenge route other than the one specified by the taxing authority. Nowhere does the legislative history announce a sweeping congressional direction to prevent 'federal-court interference with all aspects of state tax administration.'" *Id.* at 105.

Though BellSouth challenges Section 3, it has continuously paid the GRT.  Thus, even if the Court should grant the requested injunction, the Defendants will receive every dollar of the tax. Enjoining the enforcement of Section 3 will not disrupt the state's collection or receipt of the tax or otherwise disrupt state government finances.

Defendants argue that enjoining Section 3 would interfere with the state's collection of the tax because the prohibitions contained in Section 3 make clear that communications providers are the parties legally responsible for paying the new tax.  The Defendants state that, if BellSouth is allowed to separately state the tax on its customer's bills, its customers will believe they are the taxpayer which will cause refund claims and other challenges to the tax by individuals who do not have legal standing to bring the claims.

Even assuming that BellSouth's customers will believe they are responsible for paying the newly imposed GRT, such a misapprehension would not affect the state's ability to collect the GRT. BellSouth is the parties responsible for paying the tax.  BellSouth clearly understands that and, in fact, is currently paying the tax.  Thus, enjoining Section 3 would not interfere with the state's collection of the tax from the parties responsible for paying it.

Defendants appear to argue that this act is barred by the TIA because enjoining Section 3 *may* ultimately cost the state money because some of BellSouth's customers *may* think they are

responsible for paying the tax and then *may* bring suit to challenge the tax or get a refund and the state would have to defend those actions. Again, however, the TIA " proscribes interference only with those aspects of state tax regimes that are needed to produce revenue – *i.e.,* assessment, levy, and collection." *Hibbs*, 542 U.S. at 105 n. 7. The TIA does not bar all injunctions that may ultimately cost the state money.

Defendants also argue that BellSouth's action is barred by the TIA because it seeks to enjoin the Penalty Provision at KRS § 136.990(11) which imposes a monetary penalty on any provider who violates Section 3. In support of this argument, Defendants cite *Darne v. Wisconsin*, 137 F.3d 484 (7th Cir. 1998). In that case, the plaintiff challenged a section of the Wisconsin tax code which assessed a tax penalty for early withdrawal of retirement funds. 137 F.3d at 486. Accordingly, the case fell within the TIA's "undisputed compass." *Hibbs*, 542 U.S. at 106. The case involved a plaintiff "who mounted federal litigation to avoid paying state taxes. . . Federal-court relief, therefore, would have operated to reduce the flow of state tax revenue." *Id.*

In this case, BellSouth does not challenge the tax and is, in fact, paying the tax. It only challenges Section 3, which restricts how it may recover the tax and how it may present the tax on its customers' bills, and the penalties for violating Section 3. Thus, the TIA is not an impediment to this Court's exercise of jurisdiction in this case. Accordingly, the Motion to Dismiss will be DENIED.

## III.   BELLSOUTH'S MOTION FOR PRELIMINARY INJUNCTION OR SUMMARY JUDGMENT (Rec. No. 8).

BellSouth has filed a Motion for Preliminary Injunction or, in the alternative, Summary Judgment. (Rec. No. 8). In their response, the Defendants treat BellSouth's motion as one for

6

summary judgment.  (Rec. No. 14 at 5).  Defendants further state that "the issues in this case are ones of law." (Rec. No. 14 at 4).  Accordingly, the Court will treat BellSouth's motion as a Motion for Summary Judgment and will deny its Motion for Preliminary Injunction as moot.

Under Fed. R. Civ. P. 56, summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

### A.      First Amendment.

The First Amendment provides that "Congress shall make no law. . . abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." U.S. Const., amend. I.

### 1)      A Line Item Charge is "Speech."

Defendants first argue that it is "questionable" whether the conduct in which BellSouth wishes to engage, i.e., separately stating the GRT on its customers' bills, is "speech" protected by the First Amendment.  (Rec. No. 14, Defs.' Response at 12).   BellSouth argues that the line item would "inform the customers of the origin and amount of the Kentucky GRT charge." (Rec. No. 1, Complaint ¶ 49).  It states that the line item it seeks to place on its customers' bills "notifies the customers that Kentucky has imposed the gross revenues tax on telecommunications providers and informs the customers of the effect the tax will have on their bills." (Rec. No. 15, Pf.'s Reply at 10). Accordingly, BellSouth wishes to use written words on its customers' bills to convey a message.

"In general, words communicating information are 'speech' within the meaning of the First Amendment, whether or not the words convey important ideas." *Giebel v. Sylvester*, 244 F.3d 1182,

1186-87 (9th Cir. 2001). That line items communicate information is made clear by the Defendants' argument that BellSouth wishes to use the line item to convey *misleading* information. BellSouth will convey certain information by placing a line item on its customers' bills and, thus, will engage in "speech."

### 2) Section 3 Does not Survive Intermediate Scrutiny.

Defendants next argue that a line item on a utility bill is "commercial speech." Commercial speech is defined as "expression related solely to the economic interests of the speaker and its audience," or as "speech proposing a commercial transaction." *Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n,* 447 U.S. 557, 561-62 (1980). It is well established that political speech is entitled to greater protection than "commercial speech." *Central Hudson*, 447 U.S. at 563.

The Court has been unable to locate any cases that specifically determine whether information a company presents on its consumer bills is commercial speech. The parties have cited no such cases. BellSouth cites *Consolidated Edison Co. v. Public Service Comm'n*, 447 U.S. 530 (1980) and *Pacific Gas and Elec. Co. v. Public Util. Comm'n of Cal.*, 475 U.S. 1 (1986), both of which involved restrictions upon written materials included in a company's billing envelope. In both cases, the Supreme Court analyzed the restrictions as content-based restrictions and not as restrictions on commercial speech. *Consolidated Edison*, 447 U.S. at 540; *Pacific Gas and Elec. Co.*, 475 U.S. at 8-9.

Neither *Consolidated Edison* nor *Pacific Gas*, however, involved speech on a company's bills. Instead, both dealt with other matter included in a company's billing envelope. *Consolidated Edison* dealt with an order by the New York Public Service Commission that prohibited utilities from including in their monthly bills inserts expressing "their opinions or viewpoints on

8

controversial issues of public policy." *Consolidated Edison*, 447 U.S. at 532-33. *Pacific Gas* dealt

with a California Public Utilities Commission order requiring that Pacific Gas and Electric Company

include a newsletter from a consumer group in the company's billing envelope. 475 U.S. at 4. Thus,

both cases dealt with speech more extensive than that included in a line-item charge on a company's

bill.

In its Truth-in-Billing rulemaking, the Commission assumed without specifically addressing

the issue that speech on telephone company bills is "commercial speech." *In the Matter of Truth-in-*

*Billing and Billing Format*, 14 F.C.C.R. 7492 at 7530 ¶ 60 (1999). In that action, the Commission

decided to require carriers to "identify line item charges associated with federal regulatory action

through a standard industry-wide label and provide full, clear and non-misleading descriptions of the

nature of the charges. . . ." *Id*. at 7523 ¶ 50. In determining whether standardized labels would

violate the First Amendment, the majority analyzed the action under the "commercial speech" test.

*Id.* at 7530-31 ¶ 60. Nevertheless, in a strongly worded dissent, Commissioner Furchtgott-Roth,

stated that he found the speech to be "intensely political." *Id*. at 7589.

> The facts of this case involve language on a telephone bill and thus, at first blush,
> might be considered purely commercial. But if one looks closer, it becomes clear that
> this speech does far "more than propose a commercial transaction." *Pittsburgh Press
> Co. v. Human Relations Comm'n*, 413 U.S. 376, 385 (1973). Nor does it constitute
> "expression related solely to the economic interests of the speaker and its audience."
> *Central Hudson*, 447 U.S. at 561. Rather, the speech at issue -- brief descriptions of
> the origin and purpose of universal service charges -- attempts to identify to the
> consumer the cause and intended use of these charges. Accountability for charges that
> some consider a tax is not just a business matter, but a highly political one. Neither
> the government nor the telephone industry wants to be viewed by the public as the
> perpetrator or beneficiary of these new federally-related charges: for carriers it may
> be bad public relations, but for government officials it is bad politics. Few politicians
> welcome the opportunity to be associated with a new tax.

*Id*. at 7589.

In *Bloom v. O'Brien*, 841 F.Supp. 277 (D. Minn. 1993), the district court analyzed whether the First Amendment was violated by a state statute which imposed a two percent gross revenue tax on health care providers and prohibited them from separately stating the tax on bills provided to individual patients. *Id*. at 278. The Court determined that "the itemized bill is indisputably part of a commercial transaction but it does not propose a transaction as such. A bill is not a proposal that the patient pay for services already rendered, it is a demand for payment. . . The speech involved concerns, but does not propose, a transaction." *Id*. at 281.

"Because this charge is not imposed by the state on the particular transaction, but is a consequence of the gross revenue tax law, stating the amount charged to individual patients may well be construed as a political statement about the law as well as a commercial statement about what is owed. Thus, the proscribed speech may be political speech." *Id.* In the end, the court deferred deciding whether the speech at issue was political or commercial until a trial on the merits and analyzed the speech under *Central Hudson* for purposes of deciding whether a preliminary injunction was warranted. *Id*.

In this case also, the Court need not decide whether Section 3 restricts commercial speech or political speech because the provision cannot withstand even the intermediate scrutiny applied to commercial speech. In *Central Hudson*, the Supreme Court set forth the test for determining whether a particular commercial speech regulation is constitutionally permissible. Under that test, the Court must ask as a threshold matter whether the commercial speech concerns unlawful activity or is misleading. *Central Hudson*, 447 U.S. at 566. If so, then the speech is not protected by the First Amendment. If the speech concerns lawful activity and is not misleading, however, the court must next ask "whether the asserted governmental interest is substantial." *Id.,* at 566. If it is, then the

Court must "determine whether the regulation directly advances the governmental interest asserted," and, finally, "whether it is not more extensive than is necessary to serve that interest." *Id.* Each of these last three inquiries must be answered in the affirmative for the regulation to be found constitutional.

>    a)    **Line Items are not Necessarily Misleading.**

The government argues that a line item charge for the GRT is misleading commercial speech because consumers will think the line item describes a government-imposed tax that the consumers are responsible for paying.  Thus, the government argues, the line item is not protected under the First Amendment. The Defendants, however, have offered no evidence that line items are inherently misleading.

The Commission has stated that there is no general prohibition against the use of line items on telephone bills under either the FCC's rules or the Communications Act. *In the Matter of Truth-in-Billing Format*, 20 F.C.C.R. 6448, at 6459 ¶ 23.  In fact, the Commission has stated that accurate and non-misleading line items "may be useful information to the consumer in better understanding the charges associated with their service and making informed costs comparisons between carriers." *Id.*

Section 3 does not simply prohibit misleading line items.  It prohibits all line items, whether the line item contains an accurate description of the associated charge and whether it contains useful information to the consumer. The Defendants have produced no evidence that all line items are misleading.  Accordingly, Section 3 does not prohibit only misleading speech. It prohibits speech which is protected under the First Amendment.

b)      **Government has Substantial Interest in Preventing Confusing Line Items.**

The next issue is whether the government has asserted a substantial government interest in prohibiting telephone companies from separately stating the GRT on its consumer bills.   The government argues that the state has a substantial interest "that the nature and legal incidence of its tax be accurately conveyed and legally secured." They argue that Section 3 makes clear that the legal incidence of the gross revenue tax rests upon the provider and not the customer. "The provider is thereby unmistakably identified as the party, and the only party, who has the legal right to litigate any issue as to the tax's applicability or validity."   The government has a substantial interest in preventing confusion regarding the party responsible for paying a particular tax.

c)      **Section 3 Does Not Directly Advance Government's Interest in Preventing Confusing Line Items.**

The next issue is whether Section 3 directly advances the asserted governmental interest.  A regulation does not pass this test "if it provides only ineffective or remote support for the government's stated purpose" or if it "only indirectly advance[s] the state interest involved." *Central Hudson*, 447 U.S. at 564.  The government must prove that the challenged regulation "advances the Government's interest 'in a direct and material way.'" *Rubin v. Coors Brewing Co.*, 514 U.S. 476, 487 (1995)(citation omitted). That burden "is not satisfied by mere speculation or conjecture; rather, a governmental body seeking to sustain a restriction on commercial speech must demonstrate that the harms it recites are real and that its restriction will in fact alleviate them to a material degree." *Id*. (citation omitted)

As noted, Section 3 prohibits any itemization of the GRT on consumer bills, whether the line item contains accurate information or not. Prohibiting accurate and informative information in a line

item does not advance the government's interest in prohibiting confusion regarding the liability for a particular state tax.

Further, as the government has stated, Section 3 allows telephone companies to tell consumers anything they wish about the GRT in flyers, brochures and other communications in their billing envelopes. (Rec. No. 10, Response at 4, 8). If inclined to disseminate misleading information, BellSouth could disseminate much more such information in brochures and flyers than in a single line item. *See e.g., Rubin*, 514 U.S. at 488 (holding that exceptions to labeling ban on beer alcohol content for other kinds of alcohol rendered scheme irrational); *Valley Broadcasting v. FCC*, 107 F.3d 1328, 1334 (9th Cir. 1997)(holding that exceptions to casino advertising ban for other kinds of gambling undermined purpose of ban).

The fact that the statute permits misleading information in every form except a line item precludes Section 3 from directly and materially advancing the state's purported interest in preventing misleading information about the GRT.

**d)     Section 3 is Substantially Excessive.**

The final step in the *Central Hudson* analysis requires the Court to determine whether there is a "reasonable fit" between the regulation of commercial speech and the state's interest. The state bears the burden of affirmatively establishing the "reasonable fit." *Bd. of Trustees of the State Univ. of New York v. Fox*, 492 U.S. 469, 480 (1989). The state must show that the regulation is proportional to the interest served. *Id*. A regulation which is "substantially excessive" is unconstitutional. *Id*. at 479. "A regulation need not be 'absolutely the least severe that will achieve the desired end.'" *City of Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 417 n.13 (1993)(quoting *Fox*, 492 U.S. at 480). However, "if there are numerous and obvious less-burdensome alternatives to the restriction

13

on commercial speech, that is certainly a relevant consideration in determining whether the 'fit' between ends and means is reasonable." *Id*.

Section 3 prohibits substantially more speech than necessary to advance the government's interest in preventing Kentucky citizens from being misled as to their liability for the GRT. Section 3 contains a total prohibition on line item charges associated with the GRT.   Again, the government has produced no evidence that a line item is inherently misleading and the FCC has determined that line items may convey accurate and helpful information.

Further, if the government's interest is preventing misleading information, the government could have prohibited only misleading information. For example, the Commission's Truth-in-Billing rules provide that, "[c]harges contained on telephone bills must be accompanied by a brief, clear, non-misleading, plain language description of the service or services rendered."  47 C.F.R. § 64.2401(b).

The Commission has stated that "it is a misleading practice for carriers to state or imply that a charge is required by the government when it is the carriers' business decision as to whether and how much of such costs they choose to recover directly from consumers through a separate line item charge."  *In the Matter of Truth-in-Billing and Billing Format*, 20 F.C.C.R. at 6461 ¶ 27.  Carriers are therefore prohibited from using "misleading statements and descriptions" and from placing charges on a bill " in such a way as to lead a reasonable consumer to believe that the charge has been mandated by the government."  *Id.*   Thus, for example, carriers are prohibited from placing a discretionary charge in a section or subsection of the bill that otherwise contains only government required charges or taxes because this may lead a reasonable consumer into believing that the discretionary charge is also required. *Id*.

14

If the state's goal is to prevent misleading information on telephone bills, instead of broadly prohibiting any line item associated with the GRT, the government could have adopted a regulation consistent with the Commission's Truth-in-Billing regulation. Furthermore, if BellSouth employs misleading information in describing the GRT or the party legally responsible for paying it, the state could complain to the FCC which already prohibits such activity.

For these reasons, Section 3's blanket prohibition against line item charges is substantially excessive in relation to the government's asserted interest.

**3)      Conclusion.**

For all these reasons, Section 3 violates the First Amendment.  Accordingly, the Defendants must be enjoined from enforcing it and the associated Penalty Provision.

**C.      Preemption.**

BellSouth also argues that Kentucky is preempted from enacting Section 3.  Because the Court has found Section 3 unconstitutional on other grounds, the Court declines to address BellSouth's preemption argument.

The Court has determined that Section 3 violates the First Amendment and, therefore, the Defendants must be enjoined from enforcing it and the associated Penalty Provision. BellSouth also seeks attorney's fees.  However, BellSouth is not entitled to recover attorney's fees associated with its preemption argument.  This is because BellSouth would be entitled to attorney's fees only pursuant to  42 U.S.C. § 1988 which provides, "[i]n any action or proceeding to enforce. . . [42 U.S.C. § 1983]... the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988.  BellSouth purports to bring its First Amendment and preemption claims pursuant to 42 U.S.C. § 1983 which prohibits any

person from acting under the color of state law to deprive any citizen of their constitutional or statutory rights.  A claim premised on a violation of the Supremacy Clause through preemption, however, is not cognizable under § 1983.  *Gustafson v. City of Lake Angelus*, 76 F.3d 778, 792 (6th Cir. 1996); *Golden State Transit Corp. v. City of Los Angeles*, 493 U.S. 103, 107 (1989)("the Supremacy Clause, of its own force, does not create rights enforceable under § 1983"). *But cf. Dennis v. Higgins*, 498 U.S. 439, 446 (1991)(suits for violation of dormant Commerce Clause claim may be brought under § 1983).

Thus, the Court need not resolve the preemption issue to determine whether BellSouth is entitled to attorney's fees or the amount of any such award.

## D.     BellSouth's Request for Attorney's Fees.

In its Complaint and Motion for Summary Judgment, BellSouth also asks the Court to award them attorney's fees.  Attorneys' fees may be awarded to a plaintiff in a § 1983 action seeking injunctive or declaratory relief from a state or state officials acting in their official capacities. *Hutto v. Finney,* 437 U.S. 678 (1978). Such awards are not barred by the Eleventh Amendment because "Congress has plenary power to set aside the States' immunity from retroactive relief in order to enforce the Fourteenth Amendment." *Id.* at 693.  Congress has exercised that power by enacting § 1988 which makes attorneys' fees part of the costs which may be recovered by a prevailing plaintiff. *Id.* at 695.  Although *Will v. Michigan Dept. of State Police* precludes § 1983 suits against states or state officials acting in their official capacities for *money* damages or other forms of *retrospective* relief, it does not prohibit suits for injunctive or declaratory relief. 491 U.S. 58, 71 n. 10 (1989). Therefore, states are still subject to liability for attorneys' fees incurred by a plaintiff who succeeds on such claims. *Hutto,* 437 U.S. at 699-700.

16

With this Opinion and Order, the Court has determined that BellSouth is entitled to judgment as a matter of law with regard to its First Amendment claim. Accordingly, BellSouth may be entitled to recover its attorney's fees as to that claim. If BellSouth seeks to recover attorney's fees from the Defendants, it should file a motion in accordance with Federal Rule of Civil Procedure 54 and other applicable law including the Local Rules.

## IV.     CONCLUSION.

For the reasons discussed above, the Court hereby Orders as follows:

1)     The Defendants' Motion to Dismiss (Rec. No. 7) is DENIED;

2)     BellSouth's Motion for Preliminary Injunction (Rec. No. 8) is DENIED as moot;

3)     BellSouth's Motion for Summary Judgment (Rec. No. 8) is GRANTED in part and DENIED in part;

4)     BellSouth's Motion for Summary Judgment (Rec. No. 8) on its First Amendment claim is GRANTED;

5)     BellSouth's Motion for Summary Judgment (Rec. No. 8) on its preemption claim is DENIED as moot, the Court having declined to address this issue;

6)     The Defendants are hereby ENJOINED from enforcing Section 3 and, therefore, the Penalty Provision; and

7)     This matter is stricken from the active docket of this Court.

Dated this 27th day of February, 2007.



Signed By:

*__Karen K. Caldwell__*

**United States District Judge**